# NICK HAFIZ v. MIDLAND LOAN FINANCE COMPANY.[1]

October 6, 1939.

No. 32,139.

[1]Reported in 287 N. W. 677.

*G. Halvorson,* for appellant.
*M. H. Frisch,* for respondent.

HILTON, JUSTICE.

In this tort action to recover damages for the alleged conversion of an automobile, plaintiff recovered a verdict for $389. Upon motion by defendant for a new trial, a conditional order was made denying the motion if plaintiff consented to a reduction of the verdict to $289, otherwise the motion was granted. Plaintiff consented to the reduction. Defendant appeals.

On December 16, 1936, plaintiff entered into a conditional sales contract for the purchase of a used automobile from a South St. Paul car dealer. The sale price was $629.70. The vendor agreed to allow a credit of $150 upon the purchase price for the automobile traded in by plaintiff. The balance remaining, including the insurance and finance charges, was $479.70. This was to be paid in 18 monthly instalments of $26.65 each, due on the first day of each month. The conditional vendor assigned the contract to the de-

fendant, who conducts a business of financing the sale of automobiles.

Plaintiff made five monthly payments to defendant, commencing on February 1, 1937, but defaulted on the July 1 instalment. On July 30 defendant, by letter, notified plaintiff that unless the payment was sent by return mail "we will repossess the above motor vehicle as provided for by the terms of the contract and you will lose title to the same within ten days (10) from date." After the letter was received on July 31, plaintiff testified that he went to the office of the defendant corporation and talked with one of its agents, Mr. Saxon. Plaintiff testified that it was orally agreed between them that plaintiff should have an extension of time in which to pay the July 1 and also the August 1 instalments. That the jury could and did believe this testimony seems apparent. Despite this extension of time for performance, defendant retook the automobile during the time the agreement was in force. This constituted a conversion of plaintiff's interest in the car.

Plaintiff was allowed to prove the oral agreement over the seasonable objection of defendant. This is now urged as error. Several grounds are suggested. We can dispose of one by stating that defendant waived any rights which it might have had by virtue of its letter of July 30 by agreeing to an extension of time completely inconsistent with the written notice. Defendant argues that the proof of the oral agreement violated the parol evidence rule. We do not think such a violation can be found. The oral extension agreement was made subsequent to the time the original contract was reduced to writing. The purpose of the parol evidence rule, among other things, is to prevent contract parties who have integrated their agreement into a written instrument from contradicting, varying, or altering it by proving a prior or contemporaneous oral agreement. The basis of the rule is found in the fact that it is reasonable to believe the written instrument deliberately executed embodies the final agreement. 2 Dunnell, Minn. Dig. (2 ed.) § 3368. But a contract once made is subject to variations thereafter agreed upon by the parties. Consequently, such an agreement may be proved. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 3375,

1774, and cases. Morrison v. Lovejoy & Brockway, 6 Minn. 224 (319) relied upon by defendant is in no way contradictory to the propositions stated but rather is in complete accord. In view of the foregoing, it is clear there was not error unless some barrier exists other than the parol evidence rule. Defendant claims to find one in the contention that the original contract was within the statute of frauds and had to be in writing, and therefore any extension of performance had to be executed with the same formality. By settled law in this state, it does not matter whether the contract is or is not required to be in writing by the statute of frauds, the time for performance may still be extended by an oral agreement. In Bemis Bros. Bag Co. v. Nesbitt, 183 Minn. 577, 579, 237 N. W. 586, 587, it was held:

"Our cases accord with the prevailing rule in sustaining the proposition that the performance of a written contract within the statute of frauds may be extended by oral agreement without offending the statute and without additional consideration. [Citations.] We follow them."

Once an extension has been agreed upon, there cannot be a retaking, as here, without legal responsibility attaching. Reinkey v. Findley Elec. Co. 147 Minn. 161, 163, 180 N. W. 236, 237. It was said there:

"There was no consideration for the extension. None was necessary. The defendant is seeking to enforce a forfeiture of the payments made and absolute title to the property sold. It cannot make nonpayment which it induced by an agreement to extend time, though the agreement is without consideration, a ground of forfeiture."

In light of these decisions, it is clear there was not any error in allowing proof of the oral extension agreement or in submitting to the jury the question as to whether there was or was not such an understanding.

Defendant urges that a recovery in the amount allowed by the trial court ($289) is not sustained by the evidence. Again our de-

cision must be adverse to it. There is evidence from which it could be believed that the automobile without the radio, seat covers, tools, and an extra seat was worth approximately $550 on the market at the time of the conversion. At the time defendant converted plaintiff's interest, $350 remained due on the purchase price. It cannot be said that the $289 allowed is unreasonable when it is considered that the car contained a radio purchased for $49.50, two months before the conversion, as well as the other items mentioned. Plaintiff appears to have had an equity which we think was justly and accurately valued.

Defendant unsuccessfully sought to introduce various items of evidence which tended to establish that the actual cost of the automobile in December, 1936 (the time of the purchase), was not $629.70, but a lesser amount. In an action for conversion the cost of the property generally can be shown as an item of evidence on the market value, Schall v. Northland Motor Car Co. 123 Minn. 214, 143 N. W. 357, unless such evidence is too remote. McCormick, Damages, p. 176, note 64. We think the trial court's rulings can be sustained upon the ground that the purchase price, under the facts involved, was too remote in time to be of any worth in determining market value at the time of the conversion. The car was retaken nearly seven months after the sale. The automobile market is well established, and market value can be easily determined by the use of expert opinion. Such testimony, at least in the case at bar, can accurately establish market value without reference to the original cost. There was no error. Attention may be called to the fact that evidence as to what portion of the purchase price consisted of finance charges and insurance premiums which defendant sought to introduce to prove $629.70 was not the actual cost of the car did in fact get before both the court and the jury when Mr. Schleiff testified

Witness F. J. Barthel, called by defendant, was not permitted to testify as to the market value of the automobile or as to its depreciation. The basis of the ruling, assigned as error, was that a proper foundation was not established.

At the outset of the examination Barthel was asked if he could tell the market value of plaintiff's automobile in December, 1936. He replied, "Yes, I could if I saw the car." After this disclaimer of ability to estimate the market value of an automobile which he had never seen, he was asked to state its market value "taking into consideration that the testimony of the witnesses is that this car was in good condition * * *." Objections were interposed and sustained. It was not error to do so. "Good condition" as applied to an automobile is a vague and indefinite phrase. Each used car varies greatly in the use imposed upon it and the resulting wear. "Good condition" is a term which is extremely likely to be given various meanings depending upon the person testifying. The record does not show that this witness heard the testimony of the other witnesses who testified in some detail as to the condition of the car or that his opinion would be based upon this testimony. There is nothing to indicate that the witness understood the term "good condition" in the light of this previous testimony. There was not a sufficient foundation for an opinion by him, and there was no error in refusing to permit him to testify on this point. The same considerations determine adversely the contentions advanced with regard to the exclusion of testimony relative to depreciation.

Other assignments of error have been considered but need not be discussed. There is no ground for reversal presented. The order appealed from is affirmed.

Order affirmed.

