**JOHNSON et al. v. RENDER.**

No. 16273. Opinion Filed April 17, 1928.

Rehearing Denied Sept. 18, 1928.

(Syllabus.)

1. **Fraud—Corporations—Purchase of Stock of Goods for Formation of Mercantile Corporation—Fraud Upon Investor by Associates as to Amount of Purchase Price—Defrauded Investor and not Corporation Proper Party Plaintiff—Measure of Damages.**

Where parties, J., T., and G., representing themselves and others associated with them

in the transaction, including R., purchase a wholesale stock of groceries for a certain sum, and advance and pay the purchase price of such groceries, and shortly thereafter transfer such groceries to a corporation, newly chartered and organized for such purpose, which corporation thereupon issued its stock and paid its corporate funds, for such groceries, in the same amount and sum as was paid therefor by J., T., and G.; and thereafter, or during the course of the transaction, J., T., and G. fraudulently represent and state to R. it was necessary, and that they did pay a bonus of $25,000 in addition to the invoice and purchase price of such groceries, when in fact no such sum or bonus was paid, thereby inducing R. to pay to them the sum of $7,825 as a part refund and reimbursement of the bonus alleged to have been paid, which sum so paid by R. is retained and personally appropriated by the other parties; held, that R., not the corporation, was a proper party plaintiff in an action to recover from J., T., and G. the sum so paid them on such alleged bonus, such fraud being personal to R., no fraud being shown as against the corporation or its stockholders collectively.

Further held, that the measure of damages in such case is the sum and amount paid by R. on such alleged bonus.

**2. Limitation of Actions—Pleading—Amended Petition Restating Cause of Action in Different Form not a New Suit.**

An amended petition which contains no new cause of action, but merely restates, in a different form, more specifically, the same cause of action set out in the former petition, is not a new suit, and the amended petition will be held to relate back to the filing of the former. The statute of limitation in such case will not apply as a bar to the action where the former petition is filed within time.

**3. Judgment Sustained.**

Record examined, and held, sufficient to sustain the judgment of the trial court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; Albert C. Hunt, Assigned Judge.

Action by S. P. Render against Hugh M. Johnson et al. to recover certain sums alleged to have been obtained by fraud. Judgment for plaintiff, and defendants appeals. Affirmed

Wilson, Tomerlin & Chandler and Lydick, McPherren & Wilson, for plaintiffs in error.

S. P. Freeling, J. I. Howard, and R. R. Bell, for defendant in error.

LEACH, C. On February 17, 1923, S. P. Render, as plaintiff, filed in the district court of Oklahoma county his amended petition, naming as defendants, Hugh M. Johnson, John W. Teter, and W. C. Greening, which petition was similar to an original previously filed in the cause, except that the amended petition alleged the agreements referred to therein to be oral while the original did not so state, which petitions alleged in substance that on December 1, 1919, he, Render, and Hugh M. Johnson, John W. Teter, W. C. Greening, L. M. Rauch, W. E. Miller, R. L. Denton, majority stockholders in the Parsons Wholesale Grocery Company, orally agreed with each other that they would purchase, upon the best terms available, the wholesale grocery stock of the Milloway-Douglas Grocer Company, a partnership of Bartlesville; that a corporation would be formed with a capital stock of $100,000, for the purpose of owning and holding such grocery stock; that the capital stock would be subscribed and paid for by the parties named, with privilege to plaintiff and L. M. Rauch to purchase 51 per cent. of the stock of such corporation; that plaintiff was to act for the other stockholders in procuring a charter for the proposed corporation, which he did on December 6, 1919, the charter being issued in the name of Milloway-Douglas Wholesale Grocery Company; that the defendants Johnson, Teter, and Greening, acting as a purchasing committee for their associates, did purchase the said stock of groceries, the exact terms and conditions of purchase and amount paid being to plaintiff unknown; thereafter, on January 5th, plaintiff subscribed for 315 shares of capital stock of said corporation; that at the time of purchase of said stock, the defendants Johnson, Teter, and Greening falsely and fraudulently represented and stated to him that they had been compelled to pay on the stock of groceries purchased, the sum of $25,000, as a bonus for the good will of the partnership, in addition to the invoice price of the stock; that by reason thereof it was necessary that each subscriber of stock should pay a bonus of $25 a share; that plaintiff relying on such statements and the truth thereof, did pay to the defendants Johnson, Teter, and Greening, the purchasing committee, the sum of $7,825 as bonus on his shares of stock; that such purchasing committee had not paid the bonus claimed; that said sum of $7,825, paid by plaintiff, was used and appropriated by the defendants; that plaintiff did not learn of the misrepresentation until sometime in January, 1922, whereupon, he made a demand upon the defendants for the return of the alleged bonus, and prayed judgment against the defendants for the amount.

The defendants filed their answers thereto, but later withdrew the same, and interposed a demurrer to the amended petition upon the grounds that the same failed to state sufficient facts, causes of action were improperly joined, defect of parties plaintiff, and plaintiff had no legal capacity to sue in his own name, which demurrer the record shows to have been in all things sustained. Leave was granted plaintiff to amend, and thereafter he filed his second amended petition, which differed from the former petition to the extent it alleged that each of the parties to the agreement to purchase the stock of groceries should advance and pay on the purchase price thereof such sum as might be agreed upon between the parties, plaintiff and L. M. Rauch to have the option of advancing and paying for 51 per cent. of the purchase price of the stock of groceries; that the interest of each purchaser in the stock of groceries should be in proportion to the amount so invested by each of them bore to the whole price of such groceries; that it was agreed each of the purchasers of the grocery stock would transfer to the proposed corporation his respective interest in such stock of groceries at its actual cost, and should receive therefor stock in the corporation; that the purchasing committee purchased the stock of groceries in the name of W. C. Greening for the sum of $105,591.-14, as evidenced by a written contract, a copy thereof being attached; that in the purchase of the groceries, defendant Greening was acting for and on behalf of himself and associates, including plaintiff; that the purchase price of the stock of groceries was advanced and paid by the defendants Johnson, Teter, and Greening; that thereafter, on January 5, 1920, plaintiff agreed with the said Johnson, Teter, and Greening that he would take an interest in the stock of groceries to the amount of $31,300, and that he would advance and pay to them such sum to reimburse them for the amount of money they had advanced and paid upon the purchase price of said stock of groceries, and did, upon the false and fraudulent representations of the defendants respecting the payment of a bonus of $25,000, pay to the defendants the sum of $7,825 bonus upon his interest in the stock of groceries, which sum was used and appropriated by the defendants Johnson, Teter, and Greening, as individuals, and not as officers and representatives of the corporation, which corporation never received such sum or any benefit therefrom. Otherwise the second amended petition was very similar to the former petition.

A demurrer was filed to the second amend-

ed petition, which was overruled, and thereupon an answer was filed by the defendants, Johnson and Teter, which consisted of a general denial, a specific denial of their alleged agency, a plea of estoppel by the acts of plaintiff, and a plea of the statute of limitations. The defendant Greening answered similar to the other defendants, and in addition alleged, in substance, that he entered into a written contract for the purchase of the stock of groceries and consummated the purchase on December 2, 1919, by paying the purchase price to the seller in the sum of $105,591.14; he, defendant, furnishing the money therefor; that thereafter he took up with plaintiff the proposition of organizing a corporation to take over the merchandise purchased by him, which resulted in the organization of a corporation; that he sold and transferred to such corporation the stock of groceries at the invoice price thereof, plus $25,000; that the plaintiff purchased stock in the corporation with full knowledge of all the facts; further alleged that the defendant was elected vice president of the corporation; that the journal and books of the corporation, which were under the control of such corporation and plaintiff, showed the assets and invoice of the stock and contract under which the same was purchased by defendant; that with full knowledge plaintiff purchased said stock and paid the price on or about the 6th day of December, 1919; later purchased other stock; that the price which plaintiff paid for said stock was a reasonable and fair price, and the property transferred to and owned by the corporation was worth the sum at which said stock was sold to plaintiff; that plaintiff wrongfully made withdrawals from the property and funds of the corporation, and that the corporation subsequently failed and became insolvent because of the heavy inroads made upon its coffers by the plaintiff.

Upon the issues joined, a trial was had to the court, which resulted in a judgment in favor of plaintiff for the sum prayed for, and the defendants below appeal and bring the cause here for review. Parties will be referred to as they appeared below. Plaintiffs in error set out several assignments of error, which are argued and presented under three propositions, the first being:

"That the injury done was to the corporation in whom the right of action, if any, was vested, it being an action against three of the promoters of the corporation by one of their associates to recover alleged secret profits."

Plaintiffs in error rely upon the holding and decision in the case of Jarvis v. Great

Bend Oil Co., 66 Okla. 179, 168 Pac. 450, and in their brief say:

"Our Supreme Court in the Jarvis Case, supra, had the exact question presented here before it for determination. * * * The facts in that case are so nearly like the facts arrived at in the instant case, that the cases are impossible of differentiation, and in order to sustain the judgment of the lower court in the instant case, under this record, our court must overrule its previous holding in the Jarvis Case."

We do not agree with the plaintiffs in error that the cases are so similar. The Jarvis Case, supra, as stated in the opinion, was one commenced by the corporation to recover secret profits alleged to have been obtained by defendants as promoters of the corporation, through fraud practiced upon it by means of false representations to other subscribers of its corporate stock, inducing the purchase of an oil and gas lease with the corporate funds paid in by such subscribers, at a price far in excess of its value, such excess, unknown to the other stockholders, being turned over to defendants by the vendor of such lease. Among the findings of fact in that case, it is stated:

"* * * That at the time said defendants and their associates entered into said agreement for the promotion and organization of such a corporation, no particular lease had been selected for purchase. That the capital stock was to be issued upon the basis of $4 of stock for each dollar paid into the treasury by the original subscribers, who should receive the remaining $51,000 of the capital stock of the company, and who were to receive, in event that no stock should be sold, $4 of capital stock for each dollar subscribed and paid in, it being the intent and plan that by means of sales of the capital stock thereafter to be made, the corporation should be provided with a working capital, the promoters and original subscribers to receive back their money invested, and still retain 51 per cent. of the stock, which they understood would enable them to control the corporation.",

It further appears that, at a meeting of the promoters, it was agreed to purchase an oil and gas lease from Donaghy Investment Company for $25,000, and a contract was accordingly entered into between the Investment Company and the defendants Jarvis and Weems, whereupon various parties subscribed for stock in the corporation to the sum of $25,000, and a large part of such amount was paid by the subscribers, the amount paid finding its way into the hands of the investment company, the seller of the lease, who retained $10,000 of the funds paid it, and under secret agreement returned the remainder to the defendants Jarvis and Weems, who appropriated it.

In the Jarvis Case, supra, the corporation issued a majority of its capital stock; its corporate funds were paid out, for which it received only the oil and gas lease of the sale value of $10,000. There the defendants contended the right of action was not in the corporation, but it was held the fraud practiced infringed the corporate rights of the associates of the three promoters as share holders in the corporation; that the corporation was the proper party to recover the secret profits. In the instant case, the one before us for consideration, the property transferred to the corporation, the wholesale stock of groceries, was purchased and paid for by the promoters or parties at its invoice, fair value of $105,591.14, and transferred to the corporation, which was later chartered, at the same price. The purchase price of the groceries was paid to the seller on December 2, 1919, through the First National Bank of Oklahoma City by the defendant J. W. Teter, the funds apparently being arranged for by the defendants, they, Johnson and Teter, being chief officers of the bank. The funds were obtained on a note for the sum of $100,000 in favor of such bank, which note was executed in the name of Parsons Wholesale Grocery Company, likewise, another note for the sum of $5,591.14 executed in the name of Oklahoma Grocery Company, such notes being also signed or indorsed by Greening, Miller and Denton.

The companies in which some of the parties, including plaintiff, held stock, were companies in whose name such notes were executed. The Milloway-Douglas Wholesale Grocery Company was chartered on December 6, 1919, which charter was applied for and obtained by plaintiff, Render, in his name and two other parties. The corporation thereupon issued its stock in the amount of its capitalization, to the parties, Johnson, Teter, Rauch, Miller, Denton and Greening, trustee. The corporation later paid the $5,591.14 note held by the bank, which sum was the difference between the amount of the capital stock issued and the purchase price of the groceries.

In the instant case neither the corporation, nor the stockholders, collectively, were defrauded of any sum whatsoever. The corporation received value, dollar for dollar, for its stock through a receipt of the wholesale stock of groceries. The defendants here did not violate their duty or trust toward the corporation or its subscribers, collectively, and we are unable to see where the cor-

poration in the instant case would have the right to maintain any action against the defendants for the recovery and return of the sum sought to be recovered by the plaintiff, Render. According to the record, the plaintiff, Render, on January 5, 1920, by agreement with defendant Teter, executed his note dated December 2, 1919, for the sum of $35,000, and later another note for a smaller sum payable to the First National Bank, and paid interest on the notes from December 2, 1919; later paid the notes. The money paid and obtained on the notes executed by Render, or the benefit thereof, was received and retained by the defendants, except possibly a portion thereof was divided with other associates.

Defendants alleged and gave testimony that the plaintiff, Render, was not a party to the purchase of the stock of groceries or the preliminary proceedings relating thereto, but the trial court found otherwise, it being stated by the court:

"* * * Those facts there convince me that he (Render), was one of the original purchasers of the stock of groceries, that he was buying it on the same terms with Mr. Greening and those other gentlemen. * * * In other words, he was going in there at actual cost; for there wasn't to be any bonus on it."

We have examined the authorities besides the Jarvis Case, supra, cited by plaintiffs in error in support of their contention, among such being: Lomita Land & Water Co. v. Robinson (Cal.) 97 Pac. 10; Davis v. Las Ovas Co., Inc., 57 L. Ed. 426; Brannon v. Kelly (Ind.) 148 N. E. 157; California-Calaveras Mining Co. v. Walls (Cal.) 149 Pac. 595; and others. From an examination of the cases cited, it appears the facts therein are inapplicable to the facts in the instant case. In those cases, where it was held the right of action or recovery was in the corporation, the injury or wrong complained of was a fraud against the corporation or its subscribers collectively. Most of those cases arose from secret profits or commissions by promoters in the sale of property to the corporation. In the case at bar, as stated heretofore, no breach of duty was violated as against the corporation or the stockholders, collectively. The fraud complained of was against the plaintiff, Render, individually; was a breach of duty under the original agreement between him and the defendants: he, Render, and possibly one other being the only ones who paid to the defendants any part of the alleged bonus.

Our statute, section 209, C. O. S. 1921, provides:

"Every action must be prosecuted in the name of the real party in interest except as otherwise provided in this article."

As we view the record in this case, the real party in interest is the plaintiff, Render. It does not appear so material as so whether the plaintiff intended to purchase an interest in the groceries or shares of stock in the corporation, although the court found plaintiff to be one of the original parties to the purchase of the groceries, since in either case, he, Render, received no property, either groceries or stock, for the sum sought to be recovered. The fraud arose from a misrepresentation as to the payment of a bonus, whereby plaintiff was induced to pay a sum of money not in accord with and in violation of their original agreement.

14 C. J. 301, states this rule:

"If the wrong is not against the corporation, but against the stockholders individually, the action for redress must be brought by the stockholder individually, and cannot be maintained either by the corporation itself, or by stockholders on its behalf."

See, also, Thompson on Corporations (2nd. Ed.) vol. 1, sec. 114, p. 126, and Fletcher on Private Corporations, vol. 6, sec. 4051, pp. 6864-66. The following cases will be found in some features to sustain the above rule: Spalding v. North Milwaukee Townsite Co. (Wis.) 81 N. W. 1064; Getchell v. Dusenbury (Mich.) 108 N. W. 723; Turner v. Markham (Cal.) 102 Pac. 272; Whitten v. Dabney (Cal.) 154 Pac. 312; Mack v. Lata, 178 N. Y. 525. 67 L. R. A. 126; Old Dominion Copper M. & S. Co. v. Lewisohn, 210 U. S. 206, 25 L. Ed. 1025.

Also, the case of Teachout v. Van Hoesen (Iowa) 1 L. R. A. 664, is somewhat similar to the instant case. The plaintiff there sued defendant on a note, and defendant admitted liability, but set up a counterclaim; in which he alleged the plaintiff was liable to him in damages for false representation made in the matter of the organization of a corporation in which they were stockholders. The fraud appeared to arise from misrepresentation as to the cost of an ice plant. It was therein contended that the defendant could not maintain his cross-action for damages. Such right of action, if any, was in the corporation to whom the property was sold, and the court said:

"We do not think this position is sound. It is to be remembered that the fraud complained of had its inception before the corporation was organized. It was a personal transaction between the individuals. In making the representations complained of, the plaintiff was not acting as the agent of the corporation, but for the promotion of his own interest; and it seems that the

reparation for the wrong done should be made by the wrongdoer to the person upon whom the injury was inflicted."

In the case of Hess v. Draffen (Mo.) 74 S. W. 440, it was said:

"Where defendants, who were the owners of certain abstract books, which were to be the capital stock of a corporation to be formed, made false representations to plaintiff as to the value of such books, etc., and as to their contents, in order to induce him to subscribe for stock in the corporation, which he did, plaintiff was not precluded from recovering damages for such fraud from defendants on the ground that the fraud, if any, was against the corporation to which the books were subsequently transferred.

"* * *The defendants were the owners of said books, which were to be the capital stock of the corporation; and the representations are not charged to have been made to defraud such corporation, but made to induce plaintiff to subscribe to its stock, whereby he was induced to part with his money."

In the case of Gast v. King, 27 Okla. 554, 112 Pac. 997, the court sustained plaintiff's petition wherein he sought to recover damages and alleged misrepresentations and fraud on the part of the defendants, promoters of a corporation in which plaintiff was induced to buy stock.

We are of the opinion that no error was committed in the holding of the trial court to the effect that the right of action in the instant case was vested in the plaintiff, Render, rather than in the corporation.

Plaintiffs in error's second proposition is to the effect and in substance that plaintiff's second amended petition alleged a different cause of action, and was barred by the statute of limitations.

Plaintiff below alleged that he discovered the alleged fraud, which is the basis of his action, during the month of January, 1922. The evidence in the case indicates that he learned of such fraud in the latter part of December, 1921, or first part of January, 1922. The trial court found plaintiff's action was commenced within two years after he discovered the fraud. Plaintiff below filed his original petition on January 11, 1923, and amended petition on February 17th, and a second amended petition, upon which the cause was tried, on January 29, 1924.

It is urged by plaintiffs in error that the original and first amended petition stated no cause of action against defendants below; that the filing of the second amended petition alleged and stated a new cause of action, and therefore was barred because not filed within the two years of the date of the discovery of the fraud.

Our statutes relating to procedure and pleading are in part as follows:

"In the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." Section 294, C. O. S. 1921.

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto by amendment." Section 318, C. O. S. 1921.

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Section 319, C. O. S. 1921.

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Section 2822, C. O. S. 1921.

The gravamen of the charge or basis of the action, as stated in each of the petitions, was fraud and deceit based upon misrepresentation and statements whereby plaintiff paid to defendants the sum prayed for. Each of the petitions alleged that the plaintiff and the parties named, including the defendants, on or about December 1, 1919, orally agreed to purchase the wholesale stock of groceries of the Milloway-Douglas Grocer Company upon the best terms available, and to form a corporation to hold and own the same.

The second amended petition elaborated on the details of the original agreement between the parties, and therein alleged plaintiff purchased an interest in the stock

of groceries, but did not, as we view it, change the cause of action from that stated in the other petitions. The question of whether plaintiff intended to or did purchase an interest in the groceries or shares of stock in the corporation does not seem to be the material issue. The stock in the corporation was but a representative of the stock of groceries.

"It has been declared to be a fair test, in determining whether a new cause of action is alleged in an amendment, to inquire if a recovery had upon the original complaint would be a bar to any recovery under the amended complaint, or if the same evidence would support both, or if the same measure of damages is applicable. * * *" (1 Encyc. of Pl. & Pr. 556.) Phenix Ins. Co. v. Ceaphus, 51 Okla. 89, 151 Pac. 568.

Applying the above rule, it would appear that had a suit been maintained under the first amended petition in this cause, there would be little question but that a recovery had thereunder could be successfully pleaded in bar against a suit under the second amended petition.

"Also, it has been held that an amended petition, which is no more than a restatement of the gravamen of the charge in a former pleading, is not departure, although the petition formed in tort and the amendment averred a contract liability only." Bancroft-Whitney, vol. 1, p. 765; Shoemaker v. Commercial Assoc. Co., 72 Neb. 650. 101 N. W. 335.

"So long as the cause of action attempted to be set forth in the pleading upon which the summons is issued is the same as the one stated in the amended pleading, it must be held to have been pending from the time of the service of the summons." Haack v. Coughlan, 134 Minn. 78, 158 N. W. 908.

"Amendments of pleadings may be allowed in furtherance of justice. when such amendments do not substantially change the cause of action or defense. This change does not refer to the form of the remedy, but to the general identity of the transaction." Van Winkle v. Brooks, 53 Okla. 411, 156 Pac. 1152.

In the case at bar the cause of action was the fraud growing out of the misrepresentations made, and the defense pleaded thereto was the same in the different answers filed by defendants.

"The statutes and also the decisions of the courts of this state are extremely liberal in permitting amendments to pleadings, so long as such amendments are in furtherance of justice. and amendments which even change the cause of action may be permitted, provided they do not substantially change the plaintiff's claim." Wynnewood Cotton

Oil Co. v. Moore, 54 Okla. 163, 153 Pac. 633.

In the case of Armstrong v. May, 55 Okla. 539, 155 Pac. 238, will be found collected a number of decisions upon the question of amendment and statute of limitation, it being said in the syllabus of that case:

"An amended petition which contains no new cause of action, but merely an enlarged claim for damages arising from the same act mentioned in the original petition, is not subject to demurrer because the same shows on its face that claim is barred by statute of limitations; but the amended petition will be held to relate back to the filing of the action and defeat the operation of the statute."

In the case of M., K. & T. Ry. Co. v. Perino, 89 Okla. 136, 214 Pac. 907, it was held that, while the original petition failed to state a cause of action because plaintiff failed to allege no personal representative had been appointed for deceased, an amendment thereto alleging such fact after the two-year statute of limitations had run did not bar recovery, such amendment not being equivalent to the commencement of a new or different action, and the same related back to the beginning of the action.

A similar holding was announced in the case of M., K. & T. Ry. Co. v. Wulf, 226 U. S. 570. In McEachen v. Kinkaid, 99 Okla. 123, 225 Pac. 951, it was held that in a suit for services performed under written contract, an amendment. to the petition, alleging part of the services were performed under an oral contract, was not barred by limitations, because the action grew out of one and the same transaction. Under the evidence and record in this cause, in view of our liberal statutes relating to procedure and pleading, we are of the opinion that the record does not sustain the contention of the plaintiffs in error as set forth in their second proposition.

The third proposition of plaintiff in error is:

"By the second amended petition and all of the evidence, and the special findings of the court, the sole remedy of the plaintiff in this case, if any, was for the recovery of the difference between the value of the corporate stock plaintiff received and the value the stock would have had if the alleged misrepresentations had been true"

—under which it is asserted by plaintiffs in error that the plaintiff below abandoned the contract or arrangement made in December, 1919, and that he seeks and is entitled to relief solely on account of fraudulent misrep-

resentations made under the contract between him and the defendants under date of January 5, 1920, and says:

"* * * Their rights and liabilities should therefore be determined upon the basis that the plaintiff and defendant were as ordinary strangers"

—and asserts the measure of damages in such case is controlled by the decision in the case of Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 Pac. 968, wherein it was said:

"It is a settled rule in this jurisdiction that the measure of damages to a purchaser for fraud of his seller in inducing him to enter into a contract is the difference between the actual value of the property sold and the value it would have had if the representations were true."

Were the parties here strangers dealing at arm's length, and the contract one of bargain and sale, such rule would apply, but such do not appear to be the facts in this case. The trial court found that the plaintiff was one of the original purchasers of the stock of groceries, that he was buying it on the same terms as the defendants, that he was to pay no bonus, which finding we consider to be supported by the evidence. It appears there was a fiduciary relation existing between the parties; they were in the nature of joint adventurers.

"The relation between parties to a joint adventure is fiduciary in its character, and requires the utmost good faith in all of the dealings of the parties with each other." Dike v. Martin, 85 Okla. 103, 204 Pac. 1106.

"Rights and Liabilities of Promoters Inter Se.—If two or more persons associate themselves for the purpose of purchasing property, and one of them represents to the others that particular property can be bought for a designated price, which he procures to be paid by the associates, when in truth the purchase is for a less sum, and he has received the difference between the two sums, no doubt he may be compelled to account for such difference, though the property may be worth all that was paid for it." 7 R. C. L. section 65, p. 86.

See, also, Thompson on Corporations (2nd. Ed.) vol. 1, sec. 114, p. 126; Central Trust Co. v. E. Tenn. Land Co., 116 Fed. 743.

In the case of Teachout v. Van Hoesen, supra, it was said:

"The turning over the property to the corporation was not a sale to the defendant. The parties were jointly entering into a business enterprise, trusting in the honesty of each other, and they had the right to rely upon and expect the utmost good faith from each other. The representation of the actual cost of the Grefe plant was the representation of a fact, and not a mere opinion as to the value of the property."

"Where plaintiff and defendants agreed to jointly purchase an oil leasehold, each to receive an interest in proportion to the amount of his contribution to the price, and plaintiff paid his part thereof, relying on the agreement of the others to pay their proportionate shares, defendants, by agreeing with the sellers for rebate of their proportionate part, so as in effect to reduce the total price, though leaving plaintiff to pay his part on the basis of the original price, were guilty of a fraud upon plaintiff, authorizing him to recover from them the difference between what he paid and what he should have paid on the basis of the reduced price. He should have paid $375; he was induced by this deceit to pay $500, and the measure of his damages is the sum lost, namely, $125," Jones v. Kinney (Wis.) 131 N. W. 339.

The measure of damages in the instant case is not one based upon the value of the property received, because the plaintiff below received no property or value whatsoever for the sum sought to be recovered. The measure of damages contended for by plaintiff in error under the facts in this case do not apply.

Under the last proposition and assignments of error, it is further contended by plaintiffs in error that the court erred in overruling the demurrer to plaintiff's evidence, and in overruling the motion of defendants, plaintiffs in error here, for a judgment on the special finding of the court. From an examination of the interrogatories or questions propounded, to which the court gave an affirmative answer, we do not consider such finding to be in conflict with the general findings and judgment of the court to such an extent as to entitle defendants below, plaintiffs in error here, to a judgment thereon in their favor. The special findings by answer of the court to the interrogatories are not decisive of the issue in view of the other findings by the trial court. The special findings by the trial court were to the effect, as we view it from the record, that the plaintiff intended in the ultimate consummation of the agreement and transaction to receive and did accept stock in a corporation, which finding and fact is not in conflict with the other findings and judgment in the cause.

From an examination of the entire record, we are of the opinion that the judgment is reasonably supported by the evidence and record, and that no reversible error was

committed in the cause. For the reasons stated, the judgment of the district court is affirmed.

TEEHEE, JEFFREY, FOSTER, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 14 C. J. p. 301, §357; 27 C. J. p. 90. §239. (2) 37 C. J. p. 1071, §508; anno. 3 L. R. A. (N. S.) 268; 17 R. C. L. p. 821; 3 R. C. L. Supp. p. 738. (3) 4 C. J. p. 1129, §3122.